■ PENN CENTRAL TRANSPORTATION COMPANY, Plaintiff, v SINGER WAREHOUSE & TRUCKING CORP., Defendant. SINGER WAREHOUSE & TRUCKING CORP., Appellant, v CONSOLIDATED RAIL CORPORATION et al., Appellants, and HUNTS POINT INDUSTRIAL PARK et al., Respondents, et al., Defendant. — Order, Supreme Court, New York County (Greenfield, J.), entered July 22, 1981, which granted reargument and adhered to its original determination, deemed as renewal, and on renewal, order dismissing complaint and cross complaints unanimously reversed, on the law, with costs, and complaint and cross complaints reinstated. Appeal from order, Supreme Court, New York County (Greenfield, J.), entered October 1, 1980, which, *inter alia,* dismissed the complaint of Singer Warehouse & Trucking Corp. (Singer) against Abraham Rodolitz (Rodolitz) and dismissed the cross complaints of Consolidated Rail Corporation (Conrail) and Penn Central Transportation Company (Penn Central) against Rodolitz, dismissed as academic. The trial court dismissed the complaint and cross complaints after opening statements to the jury and offers of proof on argument. Numerous cases attest to the strict standards imposed upon a motion to dismiss the complaint under such circumstances: "It is well

settled that no complaint should be dismissed on the opening statement of counsel unless it appears beyond doubt that no question of fact is involved; that, accepting as true all the facts stated on the opening and resolving in plaintiff's favor all the material facts in issue, plaintiff nevertheless is precluded from recovery as a matter of law; and that if there be any doubt as to a defendant's right to a dismissal on the law plaintiff should be put to his proof." (*Runkel v City of New York,* 282 App Div 173, 175.) " 'Unless it is obvious that under no circumstances and in no view of testimony that might be adduced can the plaintiff prevail, the practice of dismissing on the opening of counsel alone should not be encouraged.' " (*Diglio v Rosoff Subway Constr. Co.,* 242 App Div 643; see, also *Hoffman House N.Y. v Foote,* 172 NY 348, 350, setting forth criteria for dismissal of a complaint after opening statements; *Rivera v Board of Educ.,* 11 AD2d 7; *Becker v David Askin, Jr., Inc.,* 36 AD2d 520; *Stines v Hertz Corp.,* 45 AD2d 751; *Kreuger v Kreuger,* 78 AD2d 692.) Based upon the existence of issues of fact, unresolved by this record, it was error to dismiss the complaint and cross complaints after openings. This case involved the liability of defendant-respondent Rodolitz for the creation of a continuing nuisance while he was the equitable owner, as contract vendee, of property which was adjacent to a warehouse and access driveway located at the foot of E. 149th Street and the East River in Bronx County. There were drains under the driveway, emptying into the river. In 1966 Rodolitz had the land filled in, which caused the drains to be blocked, rendering the access driveway, along which there was a right of ingress and egress to the neighboring businesses, practically unusable. In 1967, the fee to the property was conveyed to defendant-respondent Hunts Point Industrial Park, Inc. (Hunts Point), a corporation of which Rodolitz was president and sole stockholder and which continued to maintain the nuisance. In 1973, Penn Central sued Rodolitz for damages for creating the nuisance. During the pendency of the action, the Singer warehouse and trucking business was sold. Penn Central, the warehouse owner, signed a new lease with the right of ingress and egress along the access driveway, but, allegedly, neither it nor the former owners of Singer made the new owners aware of the condition of the driveway. The 1973 *Penn Central v Rodolitz* action was tried in 1976 and resulted in a nonjury verdict against Rodolitz. The court there found that Rodolitz authorized the landfill and was responsible for the damages flowing therefrom. It however declined to hold him liable for the acts of Hunts Point on the ground that he was its sole stockholder and "moving force", but stated "[t]he most essential element for piercing the corporate veil has not been established by the plaintiff, namely that the use and control of corporate entities by defendant was for fraudulent purposes and in contravention of plaintiff's legal rights". Singer began this action in 1978 against, among others, Conrail (the present warehouse owner), Rodolitz, Hunts Point and Penn Central, for damages suffered due to the creation and maintenance of the nuisance and the alleged withholding from Singer of information that the sole access driveway was effectively unusable. At trial, the court dismissed the complaints against Rodolitz after opening statements. The balance of the action was then settled. The other parties moved to renew the motions to dismiss, and the trial court granted "reargument" and adhered to its original determination. The trial court held that the decision of the court in the first action was not *res judicata,* because of a lack of identity of parties, and it declined to "pierce the corporate veil" of Hunts Point. It further held that, although RPAPL 841 provides that the creator of a nuisance and the grantee of the property may be joined as defendants in an action for nuisance, it does not provide that the creator of the nuisance will always be legally responsible, in perpetuity. It held that his liability shall

continue, *inter alia,* only where he derives a benefit from the conveyance of the property or the maintenance of the nuisance or where the succeeding owner has not had an opportunity to abate the nuisance. It found that Rodolitz obtained no benefit from any conveyance of the property and no continuing benefit from the maintenance of the nuisance and that Hunts Point had notice of the presence of the nuisance on its land and an opportunity to abate it, and therefore ruled that Rodolitz should no longer be responsible. However, under the circumstances of this case, we need not concern ourselves with the possible liability of the creator of a nuisance in perpetuity, but the general rule will suffice. "Every one who creates a nuisance or participates in the creation or maintenance thereof is liable for it" (*Hine v Aird-Don Co.,* 232 App Div 359, 360); "one who has erected a nuisance has been held liable for damages caused by the maintenance of the nuisance even after control and possession have passed to another" (*Wilks v New York Tel. Co.,* 243 NY 351, 360); "since all who participate in the creation of a nuisance are liable in damages to those injured by it, the transfer of the title to and possession of premises with an existing nuisance which was created by the transferor, as a general rule, does not relieve such former owner of liability for injuries thereafter caused by such nuisance" (46 NY Jur, Premises Liability, § 24). The motion for renewal made clear by allegations of evidentiary value that triable issues existed, including, in addition to the foregoing, whether Rodolitz used Hunts Point as a shell to fraudulently obtain at least partially "sham" purchase-money and construction mortgages on the filled-in land in question, so that substantial portions of the proceeds could be diverted to pay his personal indebtedness, and whether such alleged but partially documented fraud forms a basis upon which to "pierce the corporate veil"; and whether these same mortgages constitute a "continuing benefit" to Rodolitz; and whether the transfer of the property itself was a benefit to him. This record is inadequate to determine the unresolved factual and legal questions brought forth by the motion to renew. It becomes clear that it was error to grant the motion to dismiss the complaints after the opening statements of counsel and that appellants should be permitted to proceed with their proof at trial. Concur — Kupferman, J. P., Sandler, Sullivan, Carro and Fein, JJ.