■ RM 14 FK Corp., Respondent, v Bank One Trust Company, N.A., et al., Appellants, et al., Defendants. [831 NYS2d 120]—

Order, Supreme Court, New York County (Bernard Fried, J.), entered February 8, 2005, which, to the extent appealed from, denied the motion of defendants-appellants Bank One Trust Company, N.A. (Bank One), Teachers Insurance and Annuity Association of America (Teachers), Monumental Life Insurance Company (Monumental) and Southern Farm Bureau Life Insurance Company (Southern Farm) for summary judgment dismissing the complaint, unanimously reversed, on the law, with costs, and the motion granted and the complaint dismissed as against defendants-appellants. The Clerk is directed to enter judgment accordingly.

In 1983, Kmart sold 14 parcels of real property located in 10 states to defendant Lynx Properties Corporation (Lynx) for some $35.6 million; Lynx then leased each property back to Kmart pursuant to written leases. Lynx borrowed the purchase price from Kmart and issued 14 nonrecourse notes, secured by 14 mortgages, one for each property. Kmart sold participation interests in the loans, evidenced by certificates, with a bank acting as trustee for the certificate holders under a trust indenture; the mortgage notes and mortgages were assigned to the trustee-bank. In 1984, Lynx conveyed to defendant Lynx Associates, L.P. (Associates), both an "estate for years" in each property, with each estate expiring on January 2, 2011, and a fee interest in the buildings and improvements in each property. At the same time, Lynx conveyed to plaintiff a remainder interest in the fee of each property, subject to the estate for years and mortgages. Neither Associates nor plaintiff assumed any liability for payment of the mortgage debt. In addition, Lynx assigned the Kmart leases to another entity, Malease 14FK Corporation (Malease); it and its successor also are defendants in this action. Associates also received an option to lease each property for 27 years after the expiration of its lease for years.

With respect to each of the properties, Associates, Malease and plaintiff executed 14 "Three-Party Agreements." This case turns on the terms of paragraph 17 of these agreements. In each agreement that paragraph provides as follows:

"17. Refinancing or Replacement of Mortgage.

"In the event that the Partnership [Associates] elects to refinance or replace the Mortgage, the Remainderman [Plaintiff] agrees to execute any and all documents as may be reasonably required by the Partnership in order to effectuate such financing provided that neither Remainderman nor any of its shareholders shall be personally liable for payment of any indebtedness or for performance of any obligation and provided further that such indebtedness shall be held by an 'institutional lender' (as hereinafter defined) and shall be self-liquidating over the remaining term of the Land Estate." Each agreement defined the term "Land Estate" as the "estate for years in the Land which expires January 2, 2011."

In 1999, Associates refinanced the mortgage debt, with Cortland Deposit Corporation (Cortland) purchasing the mortgage notes and mortgages from the trustee, the execution of 14 agreements modifying the mortgage notes and the assignment of the notes and mortgage to defendant-appellant Bank One, as trustee for the new certificate holders, defendants-appellants Teachers, Monumental and Southern Farm. Although Associates also obtained in the refinancing an additional loan of $4.85 million from Cortland, the additional indebtedness is not secured by any mortgage on any of the properties. Pursuant to the refinancing, the interest rate of the notes was reduced from 13.5% to 10.07%, and the maturity date of the new aggregate principal debt of $40.15 million was extended to January 1, 2009. Although plaintiff complains that it was prejudiced by these and other terms of the refinancing, principally the provisions relating to the payment of a "Make-Whole Premium" in the event of a foreclosure and otherwise, the specifics of its complaints need not be discussed given our reading of paragraph 17 of the Three-Party Agreements.

The viability of all of plaintiff's surviving causes of action depends on the validity of its legal conclusion that its consent to the 1999 refinancing was required by paragraph 17.* Although Supreme Court ruled that there is a genuine issue of material fact concerning the intent of the parties with respect to whether plaintiff had given its consent under paragraph 17, we disagree. Under the unambiguous language of paragraph 17, plaintiff's consent was not required for a refinancing or replacement of the mortgage that satisfied the three conditions specified in paragraph 17: (1) that plaintiff have no personal liability for the indebtedness, (2) that an institutional lender hold the indebted-

---

* Supreme Court dismissed plaintiff's seventh cause of action, against defendant-appellant Bank One for tortious interferences with contract, and plaintiff has not cross-appealed from the dismissal of that cause of action.

ness, and (3) that the indebtedness be self-liquidating over the remaining term of the Land Estate. For this reason, and because it is not disputed that the 1999 refinancing satisfied all three conditions, we reverse.

"The best evidence of what parties to a written agreement intend is what they say in their writing (*Slamow v Del Col*, 79 NY2d 1016, 1018 [1992]). Here, the parties stated that if Associates "elect[ed]" to refinance or replace the mortgage and the three conditions they specified were satisfied, plaintiff was required to execute "any and all documents as may be reasonably required" by Associates to effectuate its election. In so providing, the parties made clear that plaintiff's consent was not required whenever the three conditions were satisfied. In concluding that, even when all three conditions are satisfied, paragraph 17 could not be read to require plaintiff to execute refinancing documents "regardless of how unfavorable they would be to its interest," Supreme Court effectively read into paragraph 17 another condition, viz., a requirement that plaintiff approve the refinancing or replacement of the mortgage. However, "there is no basis 'to interpret an agreement as impliedly stating something which the parties have neglected to specifically include' " (*425 Fifth Ave. Realty Assoc. v Yeshiva Univ.*, 228 AD2d 178 [1996], quoting *Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 72 [1978]; *see also Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 404 [1984] [noting the applicability to contract interpretation of the doctrine of inclusio unius est exclusio alterius]).

In addition, as defendants-appellants correctly maintain, to construe paragraph 17 as containing a fourth condition would render the express conditions superfluous. After all, even when those three conditions were satisfied, Associates might still be required to obtain plaintiff's consent. Plaintiff's position, accordingly, vitiates the principle that a contract should not be interpreted so as to render any clause meaningless (*Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64, 69 [1999]). Nor does the possibility of unfairness to plaintiff warrant an interpretation of paragraph 17 that is not in accordance with its unambiguous language (*Greenfield v Philles Records*, 98 NY2d 562, 570 [2002] ["a court is not free to alter the contract to reflect its personal notions of fairness and equity"]). That the terms of an agreement may strike a court as unfair may reflect only an inadequate or incomplete appreciation of the complexities or commercial realities of a transaction. In any event, however unfair it might seem to conclude that paragraph 17 means what it says, it is hardly obvious that recognizing in

plaintiff a broad and standardless veto power over a refinancing is a more fair (or commercially practical) alternative.

Given our reading of paragraph 17, we need not address plaintiff's contention that it enjoys surety status as a result of the 1984 transactions. Concur—Friedman, J.P., Marlow, Nardelli, Buckley and McGuire, JJ. [*See* 11 Misc 283 (2005).]