[863 NYS2d 20]

CHRISTINA SASSI-LEHNER et al., Appellants, v CHARLTON TEN-
ANTS CORP. et al., Respondents.

First Department, August 12, 2008

### APPEARANCES OF COUNSEL

*Bernstein Nackman & Feinberg, LLP*, New York City (*Roger J. Bernstein* of counsel), for appellants.

*Karlsson & Ng, P.C.*, New York City (*Kent Karlsson* of counsel), for respondents.

### OPINION OF THE COURT

CATTERSON, J.

In this declaratory judgment action, the plaintiffs seek a declaration that they are the holders of unsold shares in a cooperative corporation and thus entitled to assign, sell or transfer the shares without board approval. The question presented is whether the plaintiffs are entitled to claim the status of holders of "unsold shares" when they acquired the shares through a foreclosure sale.

It is undisputed that defendant Charlton Tenants Corp. is a cooperative incorporated in New York State in 1980. It was established by the sponsor, BDR Associates, to effect a cooperative conversion of a six-story residential apartment building located in Manhattan.

The conversion of the building to cooperative ownership began in 1982. The unit specifically at issue, apartment 4C, was not sold at the closing date of the conversion because a nonpurchasing, rent-controlled tenant chose not to vacate the apartment. At that point, the sponsor became the "holder of unsold shares" corresponding to apartment 4C.

By the third anniversary of the closing, the sponsor transferred ownership of these shares and the proprietary lease for apartment 4C to purchaser Mark Greenbaum. The fifth amendment of the offering plan, dated July 22, 1985, identified Greenbaum as the designated holder of the shares to apartment 4C.

Greenbaum was the last individual to be listed in any of the amendments to the offering plan as a holder of unsold shares of apartment 4C.[1]

When Greenbaum defaulted on an obligation secured by the shares and the proprietary lease for apartment 4C, the shares and lease were sold at a foreclosure sale by the Federal National Mortgage Association (hereinafter referred to as Fannie Mae). Michael and Christina Sassi, already shareholders in the coop, purchased the shares of apartment 4C (and for two other apartments in the building) from Fannie Mae at the foreclosure sale. At the time the Sassis purchased the shares, the apartments were still occupied by tenants with lifetime tenancy under either rent control or rent stabilization.

Michael Sassi died in June 2001. In December 2003, Christina Sassi transferred the shares of apartment 4C to her adult daughters, the plaintiffs, Christina Sassi-Lehner and Gabriella Sassi-Hill, a transfer not generally subject to board approval because it was an intrafamily transfer.

Meanwhile, apartment 4C continued to be occupied by the prior tenant. Neither Michael nor Christina Sassi, nor the plaintiffs, were listed as holders of unsold shares in any subsequent amendments to the offering plan.

In autumn 2005, the tenant in apartment 4C stopped paying rent and surrendered possession of the apartment. In December 2006, the plaintiffs contracted to sell the apartment. However, the defendant coop board refused to allow a closing without a formal application seeking consent to the sale.

On December 28, 2006, this declaratory judgment action was filed whereby the plaintiffs sought a declaration that they are holders of unsold shares in the defendant coop.

Following oral argument, the court denied the motion for declaratory judgment by memorandum decision and order dated March 28, 2007, based upon its examination of the proprietary lease and the offering plan and its amendments. The court concluded that the "crucial cooperative document to determine the issue is the [offering] [p]lan, which states that a holder of unsold shares must be a person 'designated' by the sponsor." (15 Misc 3d 1112[A], 2007 NY Slip Op 50592[U], *4-5.) The

---

1. The record shows that no amendment subsequent to the eleventh amendment dated July 2, 1990, which states that Greenbaum is the holder of 483 unsold shares allocated to the apartment, indicates any ownership of unsold shares.

court further determined that because neither the plaintiffs nor their parents had ever been designated by the sponsor as a holder of unsold shares, the plaintiffs could not claim status as holders of unsold shares.

The plaintiffs moved for reargument on April 26, 2007, which motion was denied on May 25, 2007. Both the March 28, 2007 decision and order and the subsequent order denying reargument are the subject of this appeal.

The plaintiffs assert that pursuant to the Court of Appeals decision in *Kralik v 239 E. 79th St. Owners Corp.* (5 NY3d 54 [2005]), the offering plan is not a controlling document and that in order to determine their status as holders of unsold shares, this Court is limited to a review of the certificate of incorporation, the bylaws, and the proprietary lease. Specifically, the plaintiffs rely on paragraph 38 (a) of the proprietary lease which states:

> "The term 'Unsold Shares' means and has exclusive reference to the shares of the [l]essor which were issued to the [s]ponsor or individuals produced by the [s]ponsor pursuant to the [o]ffering [s]tatement— [p]lan of [c]ooperative [o]rganization or [c]ontract of [s]ale under which the [l]essor acquired the [l]easehold to the building; and, all shares which are [u]nsold [s]hares retain their character as such (regardless of transfer) until (a) such shares become the property of a purchaser for bona fide occupancy (by himself o[r] a member of his family) of the apartment to which such shares are allocated, or (2) the holder of such shares (or a member of his family) becomes a bona fide occupant of the apartment. This [p]aragraph 38 shall become inoperative as to this [l]ease upon the occurrence of either of said events with respect to the [u]nsold s]hares held by the [l]essee named herein or his assignee."

The plaintiffs focus on two phrases found in paragraph 38 (a). First, that unsold shares are shares that "were issued to the [s]ponsor or individuals produced by the [s]ponsor" and second, the phrase that states unsold shares:

> "retain their character as such (regardless of transfer) until (a) such shares become the property of a purchaser for bona fide occupancy (by himself o[r] a member of his family) of the apartment to

which such shares are allocated, or (2) the holder of such shares (or a member of his family) becomes a bona fide occupant of the apartment."

The plaintiffs contend that pursuant to paragraph 38 (a) they are holders of unsold shares because their shares were originally held by the sponsor, and because neither they nor their parents ever occupied the apartment. Further, the plaintiffs argue that "regardless of transfer" means that unsold shares which were initially held by the sponsor may be transferred in perpetuity, regardless of who acquires them or how, whether by purchase or foreclosure. The person owning the shares has all the rights of a holder of unsold shares until such time as he or she occupies the apartment or the shares are owned by a purchaser who occupies the apartment.

The defendants contend that the motion court was correct because it found that the lease must necessarily be read in conjunction with the offering plan which states that a current holder of unsold shares must be an individual who was designated by the sponsor to be such either at closing or within three years of the closing.

For the reasons set forth below, we find that the motion court properly determined that *Kralik* does not prohibit our review of the offering plan, and that, indeed, the term "holder of unsold shares," as it appears in the proprietary lease, cannot be understood without referencing the offering plan in this case.

At the outset, we note that *Kralik* does not stand for the proposition that an offering plan may never be considered in resolving questions over unsold shares. The *Kralik* Court simply did not exclude an offering plan from being considered a relevant document as a matter of law. The Court in *Kralik* merely rejected the coop's attempts to change the terms of the Kraliks' contract with the coop by reading the Attorney General's regulations into the proprietary lease.

The *Kralik* Court reiterated the basic concept that a determination as to whether a party is a holder of unsold shares should be made "solely by applying ordinary contract principles to interpret the terms of the documents defining their contractual relationship with the cooperative corporation." (5 NY3d at 57; *see Fe Bland v Two Trees Mgt. Co.*, 66 NY2d 556, 563 [1985] [stating that "the relevant provisions of the related documents must be read together"]; *see also Brennan v Breezy Point Coop.*, 63 NY2d 1022, 1025 [1984].) Indeed, this Court has found post-*Kralik* that there are circumstances where the offering plan is

to be "taken together" with the controlling documents. (*See LJ Kings, LLC v Woodstock Owners Corp.*, 46 AD3d 321 [2007]; *Likokas v 200 E. 36th St. Corp.*, 48 AD3d 245 [2008]; *Matter of Schapira v Grunberg*, 30 AD3d 345 [2006].)

In applying the principles of basic contract interpretation, we find that, in this case, the definition of holder of unsold shares cannot be understood without reference to the offering plan since the proprietary lease unequivocally states that "[t]he term 'Unsold Shares' means and has *exclusive* reference to the shares of the [l]essor which were issued to the [s]ponsor or individuals produced by the [s]ponsor *pursuant to the [o]ffering [s]tatement—[p]lan* of [c]ooperative [o]rganization" (emphasis added). Thus, to accept the plaintiffs' suggestion that this Court should simply overlook the words "pursuant to the [o]ffering [s]tatement" found in paragraph 38 (a) is contrary to the plain language of the proprietary lease and to basic principles of contract interpretation. (*RM 14 FK Corp. v Bank One Trust Co., N.A.*, 37 AD3d 272, 274 [2007] [contracts are to be interpreted so that no portion of the contract is rendered meaningless].)

The offering plan "under which the [l]essor acquired the [l]easehold to the building" provides that "unsold shares" are those shares not sold by the closing date; that is, shares allocated to apartments occupied by nonpurchasing tenants at the time of conversion. Further, the offering plan provides that those unsold shares would either be acquired by the sponsor or they would be issued to a "financially responsible individual person *or persons*" *produced by the sponsor* at the time of closing. (Emphasis added.) Additionally, the sponsor "may at any time after closing assign such blocks of shares and proprietary leases to individuals *designated* by it as holders of [u]nsold [s]hares." (Emphasis added.) Finally, the offering plan mandates that "no later than the third anniversary of [c]losing, the [s]ponsor must have assigned all [u]nsold [s]hares . . . to individuals *designated by it* as holders of unsold shares." (Emphasis added.)[2]

Accordingly, paragraph 38 (a) of the proprietary lease reflects that unsold shares in this case were issued in a finite number

---

**2.** The "Unsold Shares" section of the offering plan concludes by listing the desirable rights that holders of unsold shares possess. It states: "[a]ny Unsold Shares and leases acquired by a holder of Unsold Shares may be sold, assigned, or transferred by him or her or his or her apartment may be sublet by him or her, without restriction or approval."

(only those allocated to apartments not purchased by occupying tenants at time of closing); they were issued to specific entities (sponsor and financially responsible individuals produced or designated by sponsor); and they were issued at a particular point in time, that is at closing, with transfers to be made by the sponsor during a period of three years following closing until the sponsor held no more unsold shares. A plain reading of this first sentence of paragraph 38 (a), therefore, makes patent that the plaintiffs do not qualify as original holders of unsold shares with the appurtenant rights of selling, assigning or transferring their shares without board approval.

Paragraph 38 (a), however, contemplates that the specific individuals designated or produced by the sponsor to be holders of unsold shares (that is, owners of occupied apartments) may subsequently want to, or have to, take advantage of the desirable characteristics of the unsold shares and, without board approval, assign, sublet, lease or transfer them to a third party. The paragraph provides for such a situation by stating that "all . . . [u]nsold [s]hares retain their character as such (regardless of transfer)" until the holder occupies the apartment or until a purchaser occupies the apartment.

Arguably, the phrase "regardless of transfer" is problematic. The plaintiffs, in fact, contend that it precisely reflects their situation; and that unsold shares retain their desirable character from inception until the end of recorded time regardless of how they are conveyed from one owner to another, or whether there has been a designation by the sponsor, so long as neither the holder nor a subsequent purchaser or their families occupy the apartment for their own use.

We disagree. Given the context, and the positioning of the phrase "regardless of transfer," the words must be interpreted to mean only those transfers effected by the previously mentioned "individuals produced by the [s]ponsor pursuant to the [o]ffering [s]tatement—[plan]."

It is an elementary principle of law that every phrase and word in a contract must be given meaning; therefore, the phrase "regardless of transfer" must be given full effect. (*See Mionis v Bank Julius Baer & Co.*, 301 AD2d 104, 109 [2002].) In this case, "regardless of transfer" is superfluous and meaningless if it is interpreted to reflect the plaintiffs' position of transfers in perpetuity. Read without the phrase, the sentence, all unsold shares retain their character as such until such shares are purchased for bona fide occupancy or the holder becomes a bona

fide occupant, would be more than sufficient to establish the plaintiffs as holders of unsold shares with all appurtenant rights. Thus, the only possible way to give full effect to that phrase is to acknowledge its limiting action. In other words, "regardless of transfer" limits any transfers of "unsold shares" to those only where the transferor is an individual designated or produced by the sponsor. The paragraph therefore, does not encompass a situation where unsold shares retain their desirable characteristics in subsequent transfers between parties where one of them is not an individual that was designated or produced by the sponsor. (*See LJ Kings, LLC v Woodstock Owners Corp.*, 46 AD3d at 322 [limited liability company (LLC) was found to be a holder of unsold shares in coop under controlling documents, namely, offering plan and proprietary lease, where LLC purchased shares from designated holder of unsold shares, no bona fide purchaser had purchased apartment for occupancy, and neither LLC nor any immediate family member ever occupied apartment].) Accordingly, since the plaintiffs acquired the shares from their parents who purchased the shares at a foreclosure sale from Fannie Mae, who was not designated by the sponsor as a holder of unsold shares, the plaintiffs cannot be recognized as holders of unsold shares.

Accordingly, the order of the Supreme Court, New York County (Edward H. Lehner, J.), entered April 2, 2007, which, inter alia, denied plaintiffs' motion for summary judgment declaring them to be holders of unsold shares allocated to three apartments in defendant cooperative corporation, and declared that plaintiffs are not holders of unsold shares, and thus are not entitled to assign the shares without board approval, should be affirmed, without costs. Appeal from order, same court and Justice, entered June 4, 2007, which denied reargument, should be dismissed, without costs, as taken from a nonappealable order.

GONZALEZ, J.P., WILLIAMS and MOSKOWITZ, JJ., concur.

Order, Supreme Court, New York County, entered April 2, 2007, affirmed, without costs. Appeal from order, same court, entered June 4, 2007, dismissed, without costs, as taken from a nonappealable order.