[14 NYS3d 388]

JOHN TAGGART et al., Respondents, v RALPH COSTABILE et al., Appellants.

Second Department, June 24, 2015

APPEARANCES OF COUNSEL

*Ellen O'Hara Woods*, Tappan, for appellants.
*Howard Z. Myerowitz*, New City, for respondents.

OPINION OF THE COURT

MILLER, J.

Among the issues presented for our review on this appeal is whether the plaintiffs have stated a cause of action alleging negligent infliction of emotional distress. In order to evaluate this issue it is necessary to consider whether an allegation of extreme and outrageous conduct is an essential element of that cause of action. Although decisions of this Court have, on occasion, included language indicating that it is, we now clarify that extreme and outrageous conduct is not an essential element of a cause of action alleging negligent infliction of emotional distress.

## I. Background

The plaintiffs, a married couple, owned certain real property located in Haverstraw, Rockland County. The defendants owned the property next door to the plaintiffs' property. The defendants leased their property to tenants, and the plaintiffs resided on their property.

The plaintiffs commenced this action against the defendants. The complaint set forth four causes of action against the defendants, to recover damages for nuisance, intentional inflfliction of emotional distress, negligent infliction of emotional distress, and loss of consortium. Notably, the tenants were not named as defendants, and the complaint did not allege any causes of action against them.

The plaintiffs alleged in the complaint that the defendants' tenants "continually breach[ed] the peace and . . . engag[ed]

in illegal activity." Specifically, they alleged that the defendants' tenants repeatedly hosted large parties at all hours of the night, and that these gatherings caused impediments to the flow of traffic and entailed loud music, public alcohol consumption, and the open use and sale of illegal drugs.

The plaintiffs also alleged that the defendants failed to take any action to remedy the problems created by their tenants despite numerous complaints from the plaintiffs and other neighbors, and that police intervention was routinely needed to restore peace to the neighborhood. They alleged that the defendants "intentionally refused to [defuse] the situation" because the defendants sought to intimidate the plaintiffs and drive them from their home. They alleged that the defendants "wanted the [plaintiffs'] land" so that they could "build a condominium complex."

The plaintiffs further alleged in the complaint that on October 3, 2009, they called the police to "break up a loud and disruptive party hosted by the [defendants'] tenants." On October 4, 2009, two armed men wearing ski masks entered the plaintiffs' residence and physically dragged the plaintiff husband from his bed, telling him "they had a problem with [him] calling the police." The two men threatened him and warned him not to call the police about the defendants' tenants anymore.

The two intruders allegedly forced the plaintiff husband from room to room, collecting all of the telephones in the house. The plaintiff husband was eventually able to break free, grab his rifle, and shoot both of the men—one was shot in the arm, the other was shot in the buttocks. The plaintiff husband also accidentally shot his own dog in the head. Responding police located the two intruders hiding in the lake behind the defendants' property. The complaint alleged that the two men "upon information and belief are related to the tenants and are constant visitors of the tenants."

After discovery, the defendants moved for summary judgment dismissing the complaint. They argued that the plaintiffs' allegations did not support a determination that they owed any duty to the plaintiffs. The defendants also asserted that their alleged conduct did not rise to the level of extreme and outrageous conduct. Finally, they argued that they could not be held responsible for the conduct of their tenants or the two men who intruded into the plaintiffs' home.

The Supreme Court denied the defendants' motion, concluding that "factual issues . . . require a trial for resolution." The defendants appeal, and we reverse.

## II. Discussion

On appeal, the defendants contend that the Supreme Court should have granted their motion for summary judgment dismissing the complaint. Accordingly, each of the four causes of action asserted in the complaint must be independently analyzed.

### A. Private Nuisance

The first cause of action alleged in the complaint sought to recover damages for a private nuisance.

The elements of a private nuisance cause of action are: "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act" (*Copart Indus. v Consolidated Edison Co. of N.Y.*, 41 NY2d 564, 570 [1977], citing Restatement of Torts § 822; *see Massaro v Jaina Network Sys., Inc.*, 106 AD3d 701, 703 [2013]).

■ Here, the plaintiffs alleged that the defendants' tenants repeatedly hosted large parties at all hours of the night which impeded the flow of traffic and entailed loud music, public alcohol consumption, and the open use and sale of illegal drugs. This type of conduct has long been recognized as having the potential to interfere with the use and enjoyment of another's property: "[i]t is a nuisance for one to permit a crowd to habitually gather on his [or her] land and by boisterous singing, obscene language and other disorderly conduct to seriously annoy his next-door neighbor" (*Hogle v Franklin Mfg. Co.*, 199 NY 388, 396 [1910]). "It is immaterial whether the acts [were] committed by [the landowner's employees] or by strangers, so long as they [were] committed on [the landowner's] land, constantly and with his [or her] knowledge" (*id.*).

However, the duty to abate a private nuisance existing on real property arises from the power to possess the property and control the activities that occur on it. Accordingly, a landowner who has relinquished possession of his or her property will not be liable for a private nuisance that arises on the property if the landowner neither created the nuisance nor had notice of it at the time that possession of the property was transferred (*see generally Wilks v New York Tel. Co.*, 243 NY

351, 360 [1926]; *Timlin v Standard Oil Co.*, 126 NY 514, 525-526 [1891]; *225 E. 64th St., LLC v Janet H. Prystowsky, M.D. P.C.*, 96 AD3d 536, 537 [2012]; *Bernard v 345 E. 73rd Owners Corp.*, 181 AD2d 543, 543-544 [1992]; *New York Tel. Co. v Mobil Oil Corp.*, 99 AD2d 185, 188 [1984]; *Penn Cent. Transp. Co. v Singer Warehouse & Trucking Corp.*, 86 AD2d 826, 828 [1982]; *accord* Restatement [Second] of Torts § 837 [1] [hereinafter the Second Restatement]; *cf. Siino v Reices*, 216 AD2d 552, 553 [1995]; *Johnson v Slocum Realty Corp.*, 191 AD2d 613, 614 [1993]). In the absence of any such knowledge or consent to the objectionable activity which may be attributable to the landowner at the time the lease is executed, the common-law duty to abate a nuisance that exists during the course of a tenancy lies with the tenant, in his or her capacity as the one in possession of the property (*see* Second Restatement § 838).

Here, the plaintiffs alleged in the complaint that the defendants leased their property to the tenants, and that the tenants were in possession of the premises during the period that the alleged nuisance arose on the property. They did not allege that the defendants created the alleged nuisance, or that they knew or had reason to know that the allegedly objectionable activities would take place at the time that the property was leased to the tenants. Rather, the plaintiffs merely alleged that the defendants "refused to take the requisite steps to restore peace and tranquillity to the neighborhood" after the alleged nuisance had begun. Accordingly, the complaint failed to allege a private nuisance for which the defendants could be held legally responsible (*see Bernard v 345 E. 73rd Owners Corp.*, 181 AD2d at 543-544).

Inasmuch as the complaint failed to state a cause of action alleging a private nuisance, the defendants demonstrated, prima facie, their entitlement to judgment as a matter of law on that cause of action (*see generally Light v Light*, 64 AD3d 633, 634 [2009]; *Fischer v RWSP Realty, LLC*, 53 AD3d 594, 595 [2008]; *see also Weiss v Michael Taylor, Ltd.*, 95 AD3d 1305, 1306 [2012]; *Ort v Ort*, 78 AD3d 1138, 1138 [2010]). Since the plaintiffs failed to rebut this prima facie showing, the Supreme Court should have granted that branch of the defendants' motion which was for summary judgment dismissing the cause of action to recover damages for private nuisance.

B. Intentional Infliction of Emotional Distress

The second cause of action asserted in the complaint sought to recover damages for intentional infliction of emotional distress.

"The tort of intentional infliction of emotional distress is a departure from the common law" (*McIntyre v Manhattan Ford, Lincoln-Mercury*, 256 AD2d 269, 270 [1998]). "The Restatement of Torts, first adopted in 1934, generally insulated an actor from liability for causing solely emotional distress" (*Howell v New York Post Co.*, 81 NY2d 115, 120 [1993]; *see* Restatement of Torts § 46 [a]).

This Court first recognized a cause of action alleging intentional infliction of emotional distress in 1961, concluding that "there may be recovery for the intentional infliction of mental distress without proof of the breach of any duty other than the duty to refrain from inflicting it" (*Halio v Lurie*, 15 AD2d 62, 66 [1961]). A few years after this Court's determination in *Halio*, the Second Restatement was published (*see* Second Restatement [1965]). The Second Restatement recognized, for the first time, the tort of intentional infliction of emotional distress: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress" (Second Restatement § 46 [1]).

Ultimately, in *Fischer v Maloney* (43 NY2d 553 [1978]), the Court of Appeals adopted the Second Restatement's formulation of intentional infliction of emotional distress (*see Howell v New York Post Co.*, 81 NY2d at 121; *Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303 [1983]). Accordingly, under New York law, a cause of action alleging intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress" (*Howell v New York Post Co.*, 81 NY2d at 121; *see Klein v Metropolitan Child Servs., Inc.*, 100 AD3d 708, 710 [2012]; *see also* 2A NY PJI2d 3:6 at 54-55 [2014]).

"The first element—outrageous conduct—serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine" (*Howell v New York Post Co.*, 81 NY2d at 121, citing William L. Prosser, *Insult and Outrage*, 44 Cal L Rev 40, 44-45 [1956]). The element of outrageous conduct has been described as "rigorous, and difficult to satisfy" (Prosser & Keeton, Torts § 12 at 61 [5th ed 1984]; *see Howell v New York Post Co.*, 81 NY2d at 122; *Seltzer v Bayer*, 272 AD2d 263, 264-265 [2000]). " 'Liability has been found only where the

conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' " (*Murphy v American Home Prods. Corp.*, 58 NY2d at 303, quoting Second Restatement § 46, Comment *d*; *see Marmelstein v Kehillat New Hempstead: The Rav Aron Jofen Community Synagogue*, 11 NY3d 15, 22-23 [2008]; *Borawski v Abulafia*, 117 AD3d 662, 664 [2014]).

The Court of Appeals has recognized that, of the four essential elements of the tort, "the outrageousness element [is] the one most susceptible to determination as a matter of law" (*Howell v New York Post Co.*, 81 NY2d at 121). In this way, the requirement that a plaintiff plead and prove extreme and outrageous conduct serves to limit the bounds of liability so that "fictitious claims" of emotional distress and emotional disturbances caused by "trivialities and mere bad manners" are not litigated in the courts (Prosser & Keeton, Torts § 12 at 56 [5th ed 1984]). This threshold of outrageousness is so difficult to reach that the Court of Appeals recognized, in 1993, that, of the intentional infliction of emotional distress claims that it had considered to that date, "every one ha[d] failed because the alleged conduct was not sufficiently outrageous" (*Howell v New York Post Co.*, 81 NY2d at 122; *see Seltzer v Bayer*, 272 AD2d at 264).

In this case, the plaintiffs alleged in the complaint that the defendants "exhibited outrageous and extreme conduct in renting to tenants who posed a clear and present danger to the neighborhood," and "refused to control the dangerous behaviors of those tenants." They alleged that the defendants refused to put a stop to their tenants' behavior despite the fact that they had actual notice that the tenants were responsible for hosting large gatherings, blocking the flow of traffic, blaring loud music at all hours of the night, drinking alcohol in the street, using illegal drugs in the street, and selling illegal drugs on the rented premises. The plaintiffs alleged that the defendants' failure to rein in their tenants ultimately led to the invasion of their property by the intruders.

Although the individuals who broke into the plaintiffs' home may have engaged in extreme and outrageous conduct, the complaint alleges no basis upon which the intruders' conduct may be imputed to the defendants. The defendants' intentional conduct, as alleged in the complaint, amounts to nothing more than a failure to ensure that their tenants and their friends refrained from committing the acts described in the complaint.

While the defendants' failure to mediate the continuing conflict between the plaintiffs and the tenants is easy to condemn, this alleged omission did not constitute extreme and outrageous conduct (*cf. Leibowitz v Bank Leumi Trust Co. of N.Y.*, 152 AD2d 169, 181-182 [1989]). Even accepting as true the allegations in the complaint regarding the defendants' conduct, and according the plaintiffs the benefit of every favorable inference, the defendants' conduct was not " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' " (*Murphy v American Home Prods. Corp.*, 58 NY2d at 303, quoting Second Restatement § 46, Comment *d*; *see Borawski v Abulafia*, 117 AD3d at 662, 664-665; *Curtis-Shanley v Bank of Am.*, 109 AD3d 634, 635-636 [2013]; *Baumann v Hanover Community Bank*, 100 AD3d 814, 816-817 [2012]; *Klein v Metropolitan Child Servs., Inc.*, 100 AD3d 708, 710 [2012]; *Andrews v Bruk*, 220 AD2d 376, 377 [1995]).

Inasmuch as the complaint failed to state a cause of action alleging intentional infliction of emotional distress, the defendants demonstrated, prima facie, their entitlement to judgment as a matter of law on that cause of action (*see generally Light v Light*, 64 AD3d at 634; *Fischer v RWSP Realty, LLC*, 53 AD3d at 595; *see also Weiss v Michael Taylor, Ltd.*, 95 AD3d at 1306; *Ort v Ort*, 78 AD3d at 1138). Since the plaintiffs failed to rebut this prima facie showing, the Supreme Court should have granted that branch of the defendants' motion which was for summary judgment dismissing the cause of action to recover damages for intentional infliction of emotional distress.

C. <u>Negligent Infliction of Emotional Distress</u>

The third cause of action asserted in the complaint was to recover damages for negligent infliction of emotional distress.

In the seminal case of *Mitchell v Rochester Ry. Co.* (151 NY 107, 110 [1896]), the Court of Appeals denied recovery sought by a woman who had a miscarriage and became ill after a team of horses "came so close to the plaintiff that she stood between the horses' heads when they were stopped" (*id.* at 108). The Court of Appeals held that "no recovery can be had for injuries sustained by fright occasioned by the negligence of another, where there is no immediate personal injury" (*id.* at 110).

However, some 60 years later, the Court of Appeals overruled *Mitchell*, stating that "a rigorous application of [the] rule [prohibiting recovery for negligently caused emotional distress]

would be unjust, as well as opposed to experience and logic" (*Battalla v State of New York*, 10 NY2d 237, 239 [1961]; *see Ferrara v Galluchio*, 5 NY2d 16 [1958]). The Court reasoned that *Mitchell* departed from the fundamental axiom of the common law that "a wrong-doer is responsible for the natural and proximate consequences of his misconduct" and that "one may seek redress for every substantial wrong" (*Battalla v State of New York*, 10 NY2d at 240 [internal quotation marks omitted]). The Court later stated that "a psychic trauma negligently caused is as much a basis for damages as is a physical hurt" (*Williams v State of New York*, 18 NY2d 481, 483 [1966], citing *Battalla v State of New York*, 10 NY2d 237 [1961], and *Ferrara v Galluchio*, 5 NY2d 16 [1958]).

The Court of Appeals subsequently identified three distinct lines of cases involving recovery for negligent infliction of emotional harm (*see Kennedy v McKesson Co.*, 58 NY2d 500, 504-506 [1983]; *see also* 1-2 Warren's Negligence in New York Courts § 2.04 [1]). "The first recognizes that when there is a duty owed by defendant to plaintiff, breach of that duty resulting directly in emotional harm is compensable even though no physical injury occurred" (*Kennedy v McKesson Co.*, 58 NY2d at 504; *see Lando v State of New York*, 39 NY2d 803 [1976]; *Battalla v State of New York*, 10 NY2d 237 [1961]; *Ferrara v Galluchio*, 5 NY2d 16 [1958]). The other two lines of cases identified by the Court of Appeals, which are not relevant here, involve the "zone-of-danger rule" (*Bovsun v Sanperi*, 61 NY2d 219, 228 [1984]; *see Tobin v Grossman*, 24 NY2d 609, 616 [1969]), and situations where a third party is physically injured through the violation of some duty which causes only financial or emotional harm to the plaintiff (*see Kennedy v McKesson Co.*, 58 NY2d at 505; *Howard v Lecher*, 42 NY2d 109 [1977]; *see also* 1-2 Warren's Negligence in New York Courts § 2.04 [1]).

Although the Court of Appeals has recognized the right to recover for negligently-caused emotional distress, the specific elements of the cause of action, as developed through case law, serve to limit its scope. In its most recent discussion of negligent infliction of emotional distress, the Court of Appeals stated: "[a] breach of the duty of care resulting directly in emotional harm is compensable even though no physical injury occurred when the mental injury is a direct, rather than a consequential, result of the breach and when the claim possesses some guarantee of genuineness" (*Ornstein v New York*

*City Health & Hosps. Corp.*, 10 NY3d 1, 6 [2008] [internal quotation marks and citations omitted]; *see Baumann v Hanover Community Bank*, 100 AD3d at 816).

The Court of Appeals has thus required that the mental injury be "a direct, rather than a consequential, result of the [negligence]" (*Kennedy v McKesson Co.*, 58 NY2d at 506), and that the claim of emotional distress possess "some guarantee of genuineness" (*Ferrara v Galluchio*, 5 NY2d at 21). The latter element may be satisfied where the particular type of negligence is recognized as providing an assurance of genuineness, as in cases involving the mishandling of a corpse or the transmission of false information that a parent or child had died (*see Johnson v State of New York*, 37 NY2d 378, 383-384 [1975]; *Massaro v O'Shea Funeral Home*, 292 AD2d 349, 351 [2002]; *see also Hering v Lighthouse 2001, LLC*, 21 AD3d 449, 451 [2005]; Restatement [Third] of Torts: Liability for Physical and Emotional Harm § 47 [b] [hereinafter the Third Restatement]). However, in the absence of such specific circumstances, the guarantee of genuineness "generally requires that the breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety" (1-2 Warren's Negligence in New York Courts § 2.04 [1] [a]; *accord Kennedy v McKesson Co.*, 58 NY2d 500 [1983]; Third Restatement § 47 [a]).

These elements of negligent infliction of emotional distress have their roots in the early policy concerns that recovery for emotional damages would open a " 'wide door' . . . not only to fictitious claims, but to litigation in the field of trivialities and mere bad manners" (Prosser & Keeton, Torts § 12 at 56 [5th ed 1984]). By requiring a direct link between the mental injury and the defendant's negligence, and by mandating some guarantee of the genuineness of the emotional injury, the Court of Appeals has recognized a standard that is effective to filter out petty and trivial complaints and to ensure that the alleged emotional distress is real (*accord Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d at 6). In this way these two elements of negligent infliction of emotional distress serve to limit the scope of the cause of action in a manner that is comparable to the extreme and outrageous conduct that must be established in order to prove intentional infliction of emotional distress (*cf. Howell v New York Post Co.*, 81 NY2d at 121).

Unlike intentional infliction of emotional distress, however, the Court of Appeals has not stated that extreme and outra-

geous conduct is an essential element of a cause of action to re-
cover damages for negligent infliction of emotional distress (*see
Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d 1
[2008]; *Kennedy v McKesson Co.*, 58 NY2d 500 [1983]; *Lando v
State of New York*, 39 NY2d 803 [1976]; *Johnson v State of New
York*, 37 NY2d 378 [1975]; *Battalla v State of New York*, 10
NY2d 237 [1961]; *Ferrara v Galluchio*, 5 NY2d 16 [1958]).
However, case law from this Court, and the First Department,
has nevertheless included language indicating or implying that
extreme and outrageous conduct is an essential element of a
cause of action to recover damages for negligent infliction of
emotional distress (*see Rodgers v City of New York*, 106 AD3d
1068, 1070 [2013]; *Ural v Encompass Ins. Co. of Am.*, 97 AD3d
562, 565-566 [2012]; *McGovern v Nassau County Dept. of Social
Servs.*, 60 AD3d 1016, 1018 [2009]; *Tartaro v Allstate Indem.
Co.*, 56 AD3d 758, 759 [2008]; *Chime v Sicuranza*, 221 AD2d
401, 403 [1995]; *Burrell v International Assn. of Firefighters*,
216 AD2d 346 [1995]; *see also Sheila C. v Povich*, 11 AD3d 120,
130-131 [2004]; *Acquista v New York Life Ins. Co.*, 285 AD2d
73, 83 [2001]; *Dillon v City of New York*, 261 AD2d 34, 41
[1999]; *Young v GSL Enters.*, 237 AD2d 119, 119 [1997]; *Natur-
man v Crain Communications*, 216 AD2d 150, 150 [1995]; *Cal-
las v Eisenberg*, 192 AD2d 349, 350 [1993]; *Stanley v Smith*,
183 AD2d 675, 676 [1992]).

Review of these cases reveals that none provides any ratio-
nale for the conclusion that extreme and outrageous conduct is
an essential element of a claim for negligent infliction of
emotional distress (*see Rodgers v City of New York*, 106 AD3d
at 1070; *Ural v Encompass Ins. Co. of Am.*, 97 AD3d at 565-
566; *McGovern v Nassau County Dept. of Social Servs.*, 60 AD3d
at 1018; *Tartaro v Allstate Indem. Co.*, 56 AD3d at 759; *Chime
v Sicuranza*, 221 AD2d at 403; *Burrell v International Assn. of
Firefighters*, 216 AD2d 346 [1995]; *see also Sheila C. v Povich*,
11 AD3d at 130-131; *Acquista v New York Life Ins. Co.*, 285
AD2d at 83; *Dillon v City of New York*, 261 AD2d at 41; *Young
v GSL Enters.*, 237 AD2d at 119; *Naturman v Crain Com-
munications*, 216 AD2d at 150; *Callas v Eisenberg*, 192 AD2d
at 350; *Stanley v Smith*, 183 AD2d at 676). Furthermore, these
cases all ultimately rely, either directly or indirectly, upon
cases that deal exclusively with intentional infliction of
emotional distress (*see Rodgers v City of New York*, 106 AD3d
at 1070; *Ural v Encompass Ins. Co. of Am.*, 97 AD3d at 565-
566; *McGovern v Nassau County Dept. of Social Servs.*, 60 AD3d

at 1018; *Tartaro v Allstate Indem. Co.*, 56 AD3d at 759; *Chime v Sicuranza*, 221 AD2d at 403; *Burrell v International Assn. of Firefighters*, 216 AD2d 346 [1995]; *see also Sheila C. v Povich*, 11 AD3d at 120, 130-131; *Acquista v New York Life Ins. Co.*, 285 AD2d at 83; *Dillon v City of New York*, 261 AD2d at 41; *Young v GSL Enters.*, 237 AD2d at 119; *Naturman v Crain Communications*, 216 AD2d at 150; *Callas v Eisenberg*, 192 AD2d at 350; *Stanley v Smith*, 183 AD2d at 676). There is simply no explanation as to why the two pleading standards, which developed independently, were conflated in these cases.

Given the inconsistent language utilized by this Court in describing the pleading standards applicable to causes of action to recover damages for negligent infliction of emotional distress, we now clarify that, notwithstanding case law to the contrary, extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress. Our conclusion is consistent with the Court of Appeals' formulation of the cause of action alleging negligent infliction of emotional distress, which makes no mention of extreme and outrageous conduct (*see Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d at 6; *Kennedy v McKesson Co.*, 58 NY2d at 506). Furthermore, this formulation of the cause of action is consistent with the New York Pattern Jury Instructions (*see* 1B NY PJI3d 2:284, Comment at 873 [2014]), the Third Restatement (*see* Third Restatement § 47), and Prosser and Keeton on Torts (*see* Prosser & Keeton, Torts § 54 at 361). Accordingly, to the extent that certain of this Court's past decisions have indicated that extreme and outrageous conduct is an element of negligent infliction of emotional distress (*see e.g. Rodgers v City of New York*, 106 AD3d at 1070; *Ural v Encompass Ins. Co. of Am.*, 97 AD3d at 565-566; *McGovern v Nassau County Dept. of Social Servs.*, 60 AD3d at 1018; *Tartaro v Allstate Indem. Co.*, 56 AD3d at 759; *Chime v Sicuranza*, 221 AD2d at 403; *Burrell v International Assn. of Firefighters*, 216 AD2d 346 [1995]), those cases should no longer be followed.

In sum, a breach of a duty of care "resulting directly in emotional harm is compensable even though no physical injury occurred" (*Kennedy v McKesson Co.*, 58 NY2d at 504; *see Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d at 6; *Baumann v Hanover Community Bank*, 100 AD3d at 816; *Cleary v Wallace Oil Co., Inc.*, 55 AD3d 773, 775 [2008]). However, the mental injury must be "a direct, rather than a

consequential, result of the breach" (*Kennedy v McKesson Co.*, 58 NY2d at 506), and the claim must possess "some guarantee of genuineness" (*Ferrara v Galluchio*, 5 NY2d at 21; *see Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d at 6; *Karin K. v Four Winds Hosp.*, 64 AD3d 686, 687 [2009]; *DiStefano v Nabisco, Inc.*, 2 AD3d 484, 485 [2003]).

Applying the correct standard to the complaint in this case, we conclude that the plaintiffs' failure to adequately allege extreme and outrageous conduct is not fatal to their cause of action alleging negligent infliction of emotional distress (*see generally Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d at 6). Nevertheless, we conclude that the complaint is deficient in another respect, as it failed to adequately allege facts that would establish that the mental injury was "a direct, rather than a consequential, result of the breach" (*Kennedy v McKesson Co.*, 58 NY2d at 506).

Here, the emotional injuries allegedly were sustained after the two masked intruders broke into the plaintiffs' home, threatened the plaintiff husband, and essentially took him hostage. The plaintiff husband was compelled to shoot the two intruders and, in the process, accidentally shot his dog.

"Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]). "In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence" (*id.*). "If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus" (*id.*).

In this case, the only duty the plaintiffs alleged that the defendants owed them was to prohibit their property from being utilized for "unlawful trade . . . or business" (Real Property Law § 231 [2]). But even assuming that the defendants violated this statute by permitting the tenants to sell drugs on their property, several other factors intervened in the chain of causation. First, it is alleged that the plaintiffs, in response to the defendants' breach of their statutory duty, repeatedly called the police to complain about the tenants' conduct. Then, it is alleged that the tenants' friends broke into the plaintiffs' home and committed. criminal acts in an attempt to dissuade the plaintiffs from calling the police.

The criminal actions of the third-party intruders were not the normal and foreseeable consequences of the situation created by the defendants' alleged failure to comply with the statutory duty. Accordingly, we conclude, as a matter of law, that the intervening acts of the third-party intruders constituted a superceding cause which severed the causal nexus (*see Nadal v State of New York*, 110 AD2d 890 [1985]; *cf. Allinger v City of Utica*, 226 AD2d 1118, 1119 [1996]). "While the invasion of the sanctity of [the plaintiffs'] home was understandably emotionally shocking, such injuries are compensable only when they are a direct, rather than a consequential, result of the breach of a duty" (*Nadal v State of New York*, 110 AD2d at 891; *cf. Maheshwari v City of New York*, 2 NY3d 288, 294 [2004]).

Inasmuch as the complaint failed to state a cause of action alleging negligent infliction of emotional distress, the defendants demonstrated, prima facie, their entitlement to judgment as a matter of law (*see generally Light v Light*, 64 AD3d at 634; *Fischer v RWSP Realty, LLC*, 53 AD3d at 595; *see also Weiss v Michael Taylor, Ltd.*, 95 AD3d at 1306; *Ort v Ort*, 78 AD3d at 1138). Since the plaintiffs failed to rebut this prima facie showing, the Supreme Court should have granted that branch of the defendants' motion which was for summary judgment dismissing the cause of action to recover damages for negligent infliction of emotional distress.

## D. Loss of Consortium

The fourth and final cause of action asserted in the complaint was for loss of consortium. Since the cause of action to recover damages for loss of consortium is derivative in nature, the dismissal of the three primary causes of action also necessitates dismissal of the loss of consortium cause of action (*see Klein v Metropolitan Child Servs., Inc.*, 100 AD3d at 711; *Paisley v Coin Device Corp.*, 5 AD3d 748, 750 [2004]). Accordingly, the Supreme Court should have granted that branch of the defendants' motion which was for summary judgment dismissing the cause of action to recover damages for loss of consortium.

## III. Conclusion

In light of the foregoing, the Supreme Court should have granted the defendants' motion for summary judgment dismissing the complaint. Accordingly, the order is reversed, on the law, and the defendants' motion for summary judgment dismissing the complaint is granted.

Skelos, J.P., Dickerson and Leventhal, JJ., concur.

Ordered that order is reversed, on the law, with costs, and the defendants' motion for summary judgment dismissing the complaint is granted.