Greene v Esplanade Venture Partnership (2019 NY Slip Op 03771)





Greene v Esplanade Venture Partnership


2019 NY Slip Op 03771


Decided on May 15, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 15, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
CHERYL E. CHAMBERS
ROBERT J. MILLER
SYLVIA O. HINDS-RADIX
FRANCESCA E. CONNOLLY, JJ.


2017-02080
 (Index No. 510780/15)

[*1]Stacy Greene, etc., et al., respondents, 
v
Esplanade Venture Partnership, et al., appellants, et al., defendant.


Milber Makris Plousadis & Seiden, LLP, Woodbury, NY (Sarah M. Ziolkowski of counsel), for appellant Esplanade Venture Partnership.
Goldstein Law, P.C. (Mauro Lilling Naparty LLP, Woodbury, NY [Caryn L. Lilling and Katherine Herr Solomon], of counsel), for appellants Blue Prints Engineering, P.C., and Maqsood Faruqi.
Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf, New York, NY (Richard M. Steigman and D. Allen Zachary of counsel), for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for personal injuries and wrongful death, the defendant Esplanade Venture Partnership appeals, and the defendants Blue Prints Engineering, P.C., and Maqsood Faruqi separately appeal, from an order of the Supreme Court, Kings County (Richard Velasquez, J.), dated December 12, 2016. The order, insofar as appealed from, granted that branch of the plaintiffs' motion which was for leave to amend the amended complaint to add a cause of action sounding in negligent infliction of emotional distress.
ORDERED that the order is reversed insofar as appealed from, on the law, with one bill of costs to the appellants appearing separately and filing separate briefs, and that branch of the plaintiffs' motion which was for leave to amend the amended complaint to add a cause of action sounding in negligent infliction of emotional distress is denied.
On May 17, 2015, debris consisting of "masonry, stucco and/or concrete" allegedly fell from the facade of a commercial building located at 305 West End Avenue in Manhattan. The falling material struck and killed Greta Devere Greene (hereinafter the decedent), who was two years old, and injured her grandmother, the plaintiff Susan Frierson. The plaintiff Stacy Greene, as administrator of the decedent's estate, and Frierson commenced this action against the defendants, asserting two causes of action sounding in negligence and wrongful death.
Approximately nine months after the commencement of this action, the plaintiffs moved, inter alia, for leave to amend the amended complaint to add a cause of action on behalf of Frierson sounding in negligent infliction of emotional distress. The proposed cause of action, denominated in the proposed second amended complaint as the fourth cause of action, alleged that Frierson "was present with [the decedent], and she observed the accident while within the zone of danger' of said accident," and that Frierson "sustained a severe shock to her nervous system, was caused to suffer severe mental anguish as a result thereof and feared the imminent injuries and death [*2]of her granddaughter." In an affidavit in support of the motion, Frierson averred that she had a close relationship with the decedent and watched her regularly while her parents were at work.
The defendant Esplanade Venture Partnership, and the defendants Blue Prints Engineering, P.C., and Maqsood Faruqi (hereinafter collectively the defendants), separately opposed the motion, arguing that Frierson and the decedent were not "immediate family" members and, thus, Frierson could not maintain a cause of action sounding in negligent infliction of emotional distress. The Supreme Court, inter alia, granted that branch of the plaintiffs' motion which was for leave to amend the amended complaint to add a cause of action sounding in negligent infliction of emotional distress. The defendants appeal.
Although leave to amend a pleading should generally be freely granted in the absence of prejudice or surprise to the opposing party (see CPLR 3025[b]; Sudit v Labin, 148 AD3d 1073), the motion to amend should be denied where the proposed amendment is palpably insufficient or patently devoid of merit (see e.g. Jones v LeFrance Leasing Ltd. Partnership, 127 AD3d 819; Hylan Elec. Contr., Inc. v MasTec N. Am., Inc., 74 AD3d 1148; Greco v Christoffersen, 70 AD3d 769). For the reasons that follow, the proposed amendment was patently devoid of merit, and leave to amend should have been denied.
In Bovsun v Sanperi (61 NY2d 219, 224), the Court of Appeals held that a plaintiff may recover damages for emotional distress "occasioned by his [or her] witnessing injury or death caused by the defendant's conduct to a member of the plaintiff's immediate family" (emphasis added). Bovsun stands for the proposition that spouses and their children are immediate family members (see id. at 233-234). In a footnote, the Court of Appeals stated: "Inasmuch as all plaintiffs in these cases were married or related in the first degree of consanguinity to the injured or deceased person, we need not now decide where lie the outer limits of the immediate family'"(id. at 233 n 13).
Subsequently, in Trombetta v Conkling (82 NY2d 549, 551), the Court of Appeals held that a niece could not recover damages for negligent infliction of emotional distress for witnessing the death of her aunt, despite the fact that the niece's mother had died when the niece was 11 years old, and the aunt had allegedly been the maternal figure in the niece's life. At the time of the accident, the plaintiff was 37 years old and her aunt was 59 years old (see id. at 551). In rendering its determination, the Court of Appeals stated: "On firm public policy grounds, we are persuaded that we should not expand the cause of action for emotional injuries to all bystanders who may be able to demonstrate a blood relationship coupled with significant emotional attachment or the equivalent of an intimate, immediate familial bond" (id. at 553).
In Jun Chi Guan v Tuscan Dairy Farms (24 AD3d 725), this Court held that the relationship of grandparent and grandchild does not constitute "immediate family" so as to permit recovery for negligent infliction of emotional distress. In Jun Chi Guan, the plaintiff grandmother was pushing her infant grandson in a stroller, when a truck owned and operated by the defendants struck the stroller, killing the infant (see id. at 725). This Court rejected the grandmother's argument that she should be considered immediate family because she was the family member who spent the most time with the infant during his waking hours (see id. at 726). Further, this Court held that "it is not appropriate for this Court to expand the class [of persons constituting immediate family] absent further direction from the Court of Appeals or the New York State Legislature" (id.).
Accordingly, on constraint of Jun Chi Guan, the plaintiffs' proposed cause of action sounding in negligent infliction of emotional distress was patently devoid of merit and, thus, the Supreme Court should not have granted the plaintiffs leave to amend the amended complaint to assert it (see Jun Chi Guan v Tuscan Dairy Farms, 24 AD3d 725; see also Thompson v Dhaiti, 103 AD3d 711, 712; Santana v Salmeron, 79 AD3d 1122, 1123).
BALKIN, J.P., CHAMBERS and CONNOLLY, JJ., concur.
MILLER, J., dissents, and votes to affirm the order insofar as appealed from, with the following [*3]memorandum, in which HINDS-RADIX, J., concurs:
We are called upon in this case to apply a line of precedent that, from its inception until the present day, has been marked by controversy and criticism, and subjected to repeated challenge. This line of cases originally was premised on generalized sentiments of "public policy" which have been so thoroughly rejected that it was long ago considered the "threshing [of] old straw" to dismantle them (Prosser & Keeton, Torts § 54 at 360 [5th ed 1984]). While I recognize the importance of precedent in our common-law system, the genius of that system lies in its ability to evolve as experience is gained and the expectations of society progress. Indeed, "the common law of this State is not an anachronism, but is a living law which responds to the surging reality of changed conditions" (Gallagher v St. Raymond's R. C. Church, 21 NY2d 554, 558).
Accordingly, where, as here, a court is asked to mechanically apply a court-made rule that lacks justification in theory, and which, in practice, produces arbitrary and disparate results, it is the duty of the court to inquire into its continued viability and, if appropriate, reformulate the rule or abolish it completely. As the Court of Appeals has recognized, "[w]e act in the finest common-law tradition when we adapt and alter decisional law to produce common-sense justice" (Woods v Lancet, 303 NY 349, 355).
For the reasons that follow, I conclude that the plaintiffs' proposed fourth cause of action is not palpably insufficient or patently devoid of merit. Accordingly, I vote to affirm the order insofar as appealed from, and must respectfully dissent.
1. Factual and Procedural Background
The plaintiffs alleged that on May 17, 2015, the plaintiff Susan Frierson and her two-year-old granddaughter, Greta Devere Greene, were sitting on an outdoor bench in front of a building located at 305 West End Avenue in Manhattan. While they sat on the bench, they were suddenly struck by falling debris which separated and fell from the façade of the building. The debris—variously described as "masonry, stucco and/or concrete"—struck Frierson's knee and ankle, and struck her granddaughter in the head.
The plaintiffs alleged that after the debris had fallen, the granddaughter was left lying on the ground in the fetal position. Frierson lifted her granddaughter back onto the bench and tried to call 911, but Frierson was shaking too hard to complete the call. Seeing that her granddaughter was not breathing, Frierson tried to administer mouth-to-mouth resuscitation, but she was unable to do so because her granddaughter's jaw was "locked shut." Frierson eventually was able to stimulate her granddaughter's breathing by blowing air into her nostrils. Paramedics responded to the scene and transported the granddaughter to a hospital by ambulance. Frierson was then transported to the hospital in a separate ambulance, where she received treatment for the injuries to her legs. Despite medical intervention, Frierson's granddaughter died from her injuries the following day.
Frierson described the emotional trauma that she suffered as a result of witnessing her granddaughter's fatal injuries. Frierson stated that she has been under the care and treatment of various medical professionals since the accident, and has been diagnosed with post-traumatic stress disorder and depression. Frierson outlined the various medications that have been prescribed to treat her depression, and described the persistent flashbacks and recurring panic attacks that she experiences. Among other things, Frierson described flashbacks where she is forced to re-live her failed attempt to pry her granddaughter's mouth open to administer CPR.
The plaintiffs alleged that the granddaughter's death and the injuries sustained by Frierson were the direct result of the defendants' negligence. The plaintiffs alleged that a piece of the façade had fallen from the subject building about 14 months before the accident. They further alleged that despite notice of the dangerous condition of the façade, the defendants repeatedly failed to inspect or make necessary repairs to it, which left it in a dangerous state of disrepair and ultimately resulted in the falling debris which killed the granddaughter and injured Frierson.
After commencing this action, the plaintiffs amended their complaint as of right pursuant to CPLR 3025(a). The amended complaint contained two causes of action. As relevant here, the first cause of action sought to recover damages for "conscious pain and suffering." The first cause of action alleged, among other things, that Frierson, as a result of being struck by the falling debris, sustained severe and permanent personal injuries, which required ongoing medical care and treatment.
After retaining new counsel, the plaintiffs moved for leave to amend the amended complaint pursuant to CPLR 3025(b). As relevant here, the proposed second amended complaint asserted two causes of action on behalf of Frierson. The proposed third cause of action alleged that Frierson had been struck by the falling debris and, as a result, had "sustained severe and permanent injuries to her head, limbs, and body, a severe shock to her nervous system, certain internal injuries, and has been caused to suffer severe physical pain and mental anguish."
The proposed fourth cause of action incorporated the allegations contained in the third cause of action and further alleged that Frierson witnessed the fatal injury that was sustained by her granddaughter while Frierson herself was "within the zone of danger'" of the accident. As a result, Frierson allegedly "sustained a severe shock to her nervous system, was caused to suffer severe mental anguish . . . and feared the imminent injuries and death of her granddaughter."
The defendant Esplanade Venture Partnership, and the defendants Blue Prints Engineering, P.C., and Maqsood Faruqi, separately opposed the plaintiffs' motion for leave to amend the amended complaint. These defendants (hereinafter collectively the defendants) argued, inter alia, that the proposed fourth cause of action was palpably insufficient and patently devoid of merit. The defendants maintained that only an immediate family member of the deceased granddaughter could recover damages for negligent infliction of emotional distress under a "zone-of-danger" theory of liability, and, under binding case law from the Court of Appeals and this Court, a grandmother could not be considered an immediate family member as a matter of law, no matter the circumstances of their relationship.
In the order appealed from, the Supreme Court rejected the defendants' contention that the proposed fourth cause of action was palpably insufficient and patently devoid of merit. The court granted the plaintiffs' motion for leave to amend the amended complaint, and the defendants appeal.
On appeal, the defendants argue that the Supreme Court improvidently exercised its discretion in granting that branch of the plaintiffs' motion which was for leave to amend the amended complaint to add the proposed fourth cause of action. The defendants contend that the proposed fourth cause of action is palpably insufficient because "a grandparent cannot maintain a claim for negligent infliction of emotional distress arising from being in the zone of danger' and observing the serious injury or death of his or her grandchild." These contentions are without merit.
My colleagues in the majority, constrained by precedent, have concluded that the Supreme Court erred as a matter of law in granting that branch of the plaintiffs' motion which was for leave to add the proposed fourth cause of action. I disagree.
2. Historical Overview of Emotional Damages
Courts had traditionally been reluctant to permit recovery for what have been described as "emotional" or "mental" injuries, as opposed to "physical" ones (see generally Prosser & Keeton, Torts § 12 at 54-55 [5th ed 1984]; Restatement [Third] of Torts: Liability for Physical and Emotional Harm ch 8, Scope Note). Commentators have long criticized this judicial reluctance by noting, inter alia, that "all emotional disturbances are at the same time physiological so that the distinction between emotional distress and physical harm, as usually drawn by the courts, may not be strictly scientific" (Fowler H. Harper & Mary Coate McNeely, A Re-Examination of the Basis for Liability for Emotional Distress, 1938 Wis L Rev 426, 426 [1938]; see Herbert F. Goodrich, Emotional Disturbance as Legal Damage, 20 Mich L Rev 497 [1922]).
Although the early English and American courts were willing to permit recovery for some forms of emotional or mental injury when they were caused by intentional tortious conduct (see e.g. Tierney v State of New York, 266 App Div 434 [false imprisonment]; Williams v Underhill, 63 App Div 223 [assault]; Cauverien v De Metz, 20 Misc 2d 144 [Sup Ct, NY County] [willful conversion]), recovery was more strictly circumscribed when such injuries were caused by a defendant's negligence (see Mitchell v Rochester Ry. Co., 151 NY 107).
However, the Court of Appeals eventually recognized a "physical contact" exception to the general prohibition against recovery for emotional harm caused by negligence (see Comstock v Wilson, 257 NY 231). In that case, the plaintiff's testator was riding in the plaintiff's automobile when it was struck by the defendant's automobile (see id. at 233). After the collision, "[t]he plaintiff's [testator] stepped from the automobile and started to write down the defendant's name and license number" (id.). "While doing so, she fainted and fell to the sidewalk, fracturing her skull" (id.). She died about 20 minutes later (see id.). The plaintiff, claiming that the death of his testator was the result of the defendant's negligence, recovered a judgment in the amount of $5,000 against the defendant (see id.).
In determining whether the judgment should be upheld, the Court of Appeals recognized that the intermediate appellate courts of New York, along with the courts of other states, had adopted the view that "where there has been a physical impact, even though slight, accompanied by shock, there may be a recovery for damages to health caused by the shock even though that shock was the result produced by the impact and fright concurrently" (id. at 237; see Jones v Brooklyn Hgts. R.R. Co., 23 App Div 141).
The Court of Appeals began its own analysis with a discussion of whether the defendant owed a duty of care to the plaintiff's testator: "Whether there can be a recovery for the consequences of fright caused by unintentional want of care, depends in the first place upon the question whether a legal right of the plaintiff has been invaded by the defendant's negligence" (Comstock v Wilson, 257 NY at 238).
The Court of Appeals, citing Mitchell v Rochester Ry. Co. (151 NY 107), stated that "for practical reasons there is ordinarily no duty to exercise care to avoid causing mental disturbance, and no legal right to mental security" (Comstock v Wilson, 257 NY at 238). Accordingly, "where no wrong was claimed other than a mental disturbance, the courts refused to sanction a recovery for the consequences of that disturbance" (id. at 239).
However, the Court of Appeals noted in Comstock that, in this case, an independent duty of care had been breached: "The collision itself, the consequent jar to the passengers in the car, was a battery and an invasion of their legal right" (id.; accord Jones v Brooklyn Hgts. R.R. Co., 23 App Div at 143-144). Accordingly, "[t]heir cause of action [was] complete when they suffered consequent damages" (Comstock v Wilson, 257 NY at 239). The Appellate Division's order affirming the judgment was therefore affirmed (see id.).
As the Court of Appeals' determination in Comstock illustrates, "the relationship which the slight impact must bear to the fright or its consequences has come to be this: it need not be a cause at all, so long as its presence is shown" (Harold F. McNiece, Psychic Injury and Tort Liability in New York, 24 St. John's L Rev 1, 52 [1949]; see Jones v Brooklyn Hgts. R.R. Co., 23 App Div at 143-144).
In 1961, the Court of Appeals held that a litigant could state a valid cause of action to recover damages for purely mental trauma even in the absence of concurrent physical contact or injury (see Battalla v State of New York, 10 NY2d 237). In that case, the infant plaintiff was placed in a ski lift chair by an employee of the defendant (see id. at 239). The employee failed to secure the seatbelt and, "[a]s a result of this alleged negligent act, the infant plaintiff became frightened and hysterical upon the descent, with consequential injuries" (id.).
The Court of Appeals concluded that the complaint stated a cause of action to recover [*4]damages for negligently inflicted emotional distress (see id. at 242). In so doing, the Court explicitly rejected the rule it had promulgated in Mitchell, that there could be no recovery for injuries, physical or mental, incurred by fright negligently induced (see id.).
The Court of Appeals stated that "a rigorous application of [that] rule would be unjust, as well as opposed to experience and logic" (id. at 239). Furthermore, "resort to the somewhat inconsistent exceptions would merely add further confusion to a legal situation which . . . lacks that coherence which precedent should possess" (id.). The Court then proceeded to systematically reject the various policy justifications that had been offered in Mitchell (see id. at 240-242).
The Court of Appeals' determination in Battalla effectively recognized that the defendant owed the infant plaintiff a duty of care to ensure that she was properly secured in the ski lift chair, and, to the extent that the defendant's breach of that duty proximately caused the infant plaintiff mental trauma, she was entitled to recover therefor (see id. at 237; see also Cohen v Varig Airlines, 62 AD2d 324, 335-336). This reading is supported by subsequent cases from the Court of Appeals which recognize that "when there is a duty owed by defendant to plaintiff, breach of that duty resulting directly in emotional harm is compensable even though no physical injury occurred" (Kennedy v McKesson Co., 58 NY2d 500, 504; see Ornstein v New York City Health & Hosps. Corp., 10 NY3d 1, 6; see also 1 Warren's Negligence in New York Courts § 241.03[3][a] [2019]).
Indeed, in Tobin v Grossman (24 NY2d 609, 613), the Court of Appeals stated that "the rule is now settled that one may have a cause of action for injuries sustained although precipitated by a negligently induced mental trauma without physical impact." However, the Court in that case refused to permit a mother to recover damages for emotional injuries sustained when she witnessed her young child sustain severe injuries after the child was struck by the defendant's negligently operated automobile (see Tobin v Grossman, 24 NY2d 609). Although the defendant clearly owed a duty of care to the plaintiff's child, the Court refused to recognize a concurrent duty to bystanders who were not "directly involved in the accident" (id. at 616), or to individuals who were otherwise "[the] victims of shock resulting from injury to others" (id. at 618).
In other words, the Court refused to recognize "derivative" liability under such circumstances (cf. Restatement [Third] of Torts § 48, Comment d), and the mother could not recover damages for her own emotional injuries that were proximately caused by the defendant's breach of a duty that was owed exclusively to her child (see Tobin v Grossman, 24 NY2d at 617).
In a subsequent case, the Court of Appeals confirmed that "there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty" (Kennedy v McKesson Co., 58 NY2d at 506). Moreover, "even as to a participant to whom a duty is owed, such injury is compensable only when [it is] a direct, rather than a consequential, result of the breach" (id.).
The Court of Appeals considered this latter situation in Bovsun v Sanperi (61 NY2d 219). In that case, a family was riding in an automobile when it incurred mechanical difficulties, and the family was forced to stop on the side of the road (see id. at 224). The father got out of the car, while the mother and the daughter remained inside it (see id.). At this point, the vehicle was struck by the defendant's vehicle, causing the father to become seriously injured (see id.).
The mother and the daughter sought to recover damages for, inter alia, emotional distress resulting from witnessing the father's injuries (see id.). The Court of Appeals concluded that, under the circumstances, their allegations stated a valid cause of action to recover such damages (see id. at 233-234).
In reaching this conclusion, the Court of Appeals stated that, "[i]n conformity with traditional tort principles, the touchstone of liability in these cases is the breach by the defendant of a duty of due care owed the plaintiff" (id. at 233). The Court concluded that the defendants owed a duty of care directly to the mother and the daughter to refrain from exposing them "to an unreasonable risk of bodily injury or death" (id. at 231). If the plaintiffs demonstrated that the [*5]defendants had breached this duty of care owed to the mother and the daughter, then the mother and the daughter were entitled to recover "as an element of [their] damages, those damages attributable to emotional distress caused by contemporaneous observation of injury or death of a member of [their] immediate family caused by the same conduct of the defendant" (id. at 233).
The Court of Appeals distinguished its determination in Tobin v Grossman (24 NY2d 609) by noting that the mother in that case had not been within the so-called "zone of danger" (Bovsun v Sanperi, 61 NY2d at 233). Since the mother in Tobin was not within the "zone of danger," she had not been exposed to an unreasonable risk of bodily injury or death and so she had failed to allege the breach of any duty owed directly to her (id.).
The Court of Appeals in Bovsun went on to make clear that it was "not . . . creating a new cause of action which has not heretofore existed under the tort law of New York" (id.). Although the Court stated that it was not recognizing any new duty of care, it acknowledged that its determination "may . . . enlarge[ ] . . . the scope of recoverable damages" in applicable cases (id.).
The Court of Appeals' last significant discussion of these "zone-of-danger" cases occurred in 1993 (see Trombetta v Conkling, 82 NY2d 549). In that case, the plaintiff sought to recover damages for the emotional shock and trauma she suffered upon witnessing her aunt's death after her aunt was run over by a truck (see id. at 551; Trombetta v Conkling, 187 AD2d 213, 214). The plaintiff, "who was not physically touched or injured" during the incident, "assert[ed] only a claim for negligent infliction of emotional distress" (Trombetta v Conkling, 82 NY2d at 551).
The Court of Appeals concluded that "while plaintiff was, without doubt, within the zone of danger when defendants' truck killed her aunt, the claim for the negligent suffering of emotional distress was properly dismissed" (id. at 554). The Court's determination was not based on a finding that the defendants did not owe any duty of care to the plaintiff (see id.). To the contrary, the Court expressed no disagreement with the principle that an individual generally owes a duty of care to refrain from exposing others to "an unreasonable and negligent risk of bodily injury or death" (id. at 552; accord Restatement [Third] of Torts § 47[a]).
Instead, the Court of Appeals' analysis was confined to the availability of damages to the plaintiff for emotional distress caused solely by the contemporaneous observation of her aunt's death (see Trombetta v Conkling, 82 NY2d at 552-553). The Court declined, on policy grounds, to expand the availability of such damages "to all bystanders who may be able to demonstrate a blood relationship coupled with significant emotional attachment or the equivalent of an intimate, immediate familial bond" (id. at 553). Since the plaintiff did not, as a matter of law, allege facts that would permit her to recover for the only type of emotional damages she sought, the Court held that the complaint was properly dismissed (see id.).
This Court subsequently applied the reasoning in Trombetta to dismiss a similar cause of action alleging that a bystander sustained negligently inflicted emotional distress (see Jun Chi Guan v Tuscan Dairy Farms, 24 AD3d 725). In that case, the defendants' vehicle struck the plaintiff while she was pushing her grandson in a stroller (see id. at 725). "The impact allegedly caused the plaintiff to sustain serious physical injuries and caused the infant's death" (id.).
Notably, the only cause of action at issue on that appeal was a cause of action "which sought to recover damages for injuries the plaintiff allegedly sustained from observing the accident in which the infant was killed" (id. at 726). Accordingly, the only component of damages at issue was "psychological injuries [the plaintiff] sustained from witnessing the death of her grandson" (id. at 728). This Court did not discuss the availability of any other types of damages, whether for physical or emotional harm (see id. at 727).
This Court ultimately concluded, over a dissent by Justice Sondra Miller, that "the class of persons in a plaintiff's immediate family' does not include his or her grandchild" (id. at 727). Accordingly, the cause of action which sought to recover damages for injuries the plaintiff allegedly sustained as a result of observing the accident was dismissed (see id.). Justice Miller noted [*6]that "[t]he special status of grandparents has long been recognized in New York statute and case law" (id. at 731 [Miller, J., dissenting]). Citing the 2003 "Grandparent Caregivers' Rights Act" (see L 2003, ch 657), Justice Miller stated "this law is the most expansive statutory grant of rights to grandparent caregivers in any state" (Jun Chi Guan v Tuscan Dairy Farms, 24 AD3d at 732). Justice Miller opined that the plaintiff-grandmother in that case "served in an intimate, critical, and consistent capacity from the time of [her grandson's] birth, caring for him daily in loco parentis'" (id.). Justice Miller concluded that "[t]here is no reason in law or equity to find that she is anyone less than a member of her grandson's immediate family'" (id.).
In Shipley v Williams (14 Misc 3d 682 [Sup Ct, Richmond County]), Justice Joseph Maltese, then sitting as a Justice of the Supreme Court, Richmond County, considered whether a brother was an immediate family member of his sister. Justice Maltese noted that "[s]ince the Court of Appeals [has] refrained from defining the term immediate family' as it pertains to those within the zone of danger,' this trial court must now deal with that issue in this case" (id. at 688).
In analyzing the issue, Justice Maltese engaged in a sweeping and comprehensive review of the various ways that the phrase " immediate family'" has been defined in statutory and regulatory law (id. at 687-688). Justice Maltese concluded that "[t]he legislature has defined [the term] immediate family' in . . . various statutes . . . which all include, at the very least, the terms siblings or brothers and sisters" (id. at 688). As relevant here, many of these statutes and regulations also define the term "immediate family" to include grandparents and grandchildren (see e.g. Public Health Law § 238[8]; 9 NYCRR 2104.5[a][1]; 2520.6[n]; 22 NYCRR 24.6[f]).
Ultimately, Justice Maltese determined that "[t]o find that a brother and sister . . . are not members of their immediate family' is contrary to the definitions established by the State Legislature and legal reason" (Shipley v Williams, 14 Misc 3d at 688-689). Accordingly, the defendants' motion to dismiss the plaintiff's cause of action based upon the alleged emotional distress sustained while she was in the zone of danger observing her brother sustain serious injury and death was denied (see id. at 689).
In sum, the progression of case law pertaining to the negligent infliction of emotional distress has generally followed the same progression that occurred in the context of intentional torts (see generally 1 Thomas A. Street, Foundations of Legal Liability, 460, 470 [1906]). That is, emotional damages were initially permitted when they could be "tacked on" to existing causes of action for which physical injuries were simultaneously sustained (see Comstock v Wilson, 257 NY at 239; Jones v Brooklyn Hgts. R.R. Co., 23 App Div at 143). Eventually, the requirement of physical injury was eliminated, and it was recognized that damages for emotional or mental injuries were properly recoverable whenever a breach of a duty of care running directly from the defendant to the plaintiff was the proximate cause thereof (see Battalla v State of New York, 10 NY2d at 242; see also Ornstein v New York City Health & Hosps. Corp., 10 NY3d at 6; Kennedy v McKesson Co., 58 NY2d at 504; cf. Tobin v Grossman, 24 NY2d at 616-617). Finally, the case law recognized that, when certain conditions were met, an additional component of damages was available for emotional injuries solely attributable to the observation of the death or physical injury of someone else (see Bovsun v Sanperi, 61 NY2d at 233).
3. Application of the Law to the Facts
As previously noted, the defendants on this appeal argue that the Supreme Court improvidently exercised its discretion in granting that branch of the plaintiffs' motion which was for leave to amend the amended complaint to add the proposed fourth cause of action. The defendants contend that the proposed fourth cause of action is palpably insufficient because "a grandparent cannot maintain a claim for negligent infliction of emotional distress arising from being in the zone of danger' and observing the serious injury or death of his or her grandchild."
"A party may amend his or her pleading . . . at any time by leave of court" (CPLR 3025[b]). The decision of whether to grant leave to amend a pleading is a determination that is "within the motion court's discretion, the exercise of which will not be lightly disturbed" (Pergament [*7]v Roach, 41 AD3d 569, 572; see Hofstra Univ. v Nassau County, N.Y., 166 AD3d 861).
"In the absence of prejudice or surprise resulting directly from the delay in seeking leave, applications for leave to amend a pleading are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit'" (Siragusa v Conair Corp., 153 AD3d 1376, 1376, quoting Lucido v Mancuso, 49 AD3d 220, 222). This formulation, specifically the use of an adverb "palpably" to modify the term "insufficient," suggests that the standard is something even more deferential than a legal sufficiency analysis (Lucido v Mancuso, 49 AD3d at 222; see generally Siegel, NY Prac § 237 [6th ed Dec. 2018 Update]).
As the Court of Appeals has stated, the key to determining whether a claim for emotional damages states a valid cause of action is the inquiry into the existence of a duty owed by the defendant to the plaintiff (see Comstock v Wilson, 257 NY at 238). "Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm" (Lauer v City of New York, 95 NY2d 95, 100; see Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 232). " Proof of negligence in the air, so to speak, will not do'" (Palsgraf v Long Is. R.R. Co., 248 NY 339, 341, quoting Frederick Pollock, The Law of Torts at 455 [11th ed 1920]).
At this point, it should be apparent that, no matter how this appeal is resolved, Frierson, based on the unchallenged claim asserted in the third cause of action, will be entitled to recover some measure of emotional damages so long as she sustains her burden of proof at trial. This fact is not, and cannot, be disputed.
The proposed third cause of action seeks to recover damages for physical injuries, including pain and suffering, sustained by Frierson when she was struck by the falling debris. Mental trauma and loss of enjoyment of life "are merely elements of conscious pain and suffering" (Pallotta v West Bend Co., 166 AD2d 637, 640; see Nussbaum v Gibstein, 73 NY2d 912, 914; McDougald v Garber, 73 NY2d 246, 253-254; Toscarelli v Purdy, 217 AD2d 815, 818; Lamot v Gondek, 163 AD2d 678, 679), and "[a]n award for pain and suffering should include compensation to an injured person for the physical and emotional consequences of the injury" (NY PJI3d 2:280, Comment).
Accordingly, if she sustains her ultimate burden of proof at trial with respect to the third cause of action, Frierson would be entitled to recover damages for not only the emotional consequences of her physical injuries, but also for the emotional consequences of the fear or shock that she suffered as a result of the defendants' breach of the duty of care they owed to her (see Comstock v Wilson, 257 NY at 237; Jones v Brooklyn Hgts. R.R. Co., 23 App Div at 143-144; compare NY PJI3d 2:280, with NY PJI3d 2:284). The defendants do not dispute this fact. To the contrary, one of the defendants, in opposing the plaintiffs' motion, argued that the emotional distress alleged in the proposed fourth cause of action was "duplicative" of the emotional distress alleged in the proposed third cause of action.
The proposed fourth cause of action adds the allegation that Frierson witnessed the fatal injury that was sustained by her granddaughter while Frierson herself was "within the zone of danger'" of the accident and that, as a result of the defendants' negligence, Frierson "sustained a severe shock to her nervous system, was caused to suffer severe mental anguish . . . and feared the imminent injuries and death of her granddaughter."
These facts, as alleged, "fit within [a] cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88). "A breach of the duty of care resulting directly in emotional harm is compensable even though no physical injury occurred when the mental injury is a direct, rather than a consequential, result of the breach and when the claim possesses some guarantee of genuineness" (Ornstein v New York City Health & Hosps. Corp., 10 NY3d at 6 [internal quotation marks omitted]; see Ball v Miller, 164 AD3d 728, 730; Taggart v Costabile, 131 AD3d 243, 252-253; see also E.B. v Liberation Publs., 7 AD3d 566, 567; Perry v Valley Cottage Animal Hosp., 261 AD2d 522, 522-523; Hecht v Kaplan, 221 AD2d 100, 105; Losquadro v Winthrop Univ. Hosp., 216 AD2d 533, 534).
Here, the proposed fourth cause of action adequately alleges (1) the existence of a duty owed directly to Frierson, (2) a breach of that duty which unreasonably endangered Frierson's physical safety and caused her to fear for her own safety, and (3) emotional harm suffered by Frierson which resulted from being exposed to such danger (see Ornstein v New York City Health & Hosps. Corp., 10 NY3d at 6; see also Restatement [Third] of Torts § 47[a]).
Accordingly, if Frierson sustained her ultimate burden of proof at trial with respect to the proposed fourth cause of action, she would be entitled to recover damages to compensate her for the emotional consequences of the fear that she experienced as a result of the defendants' negligence in exposing her "to an unreasonable risk of bodily injury or death" (Bovsun v Sanperi, 61 NY2d at 231).
The proposed fourth cause of action thus set forth allegations that are not palpably insufficient or patently devoid of merit. Accordingly, the Supreme Court providently exercised its discretion in granting that branch of the plaintiffs' motion which was for leave to amend the amended complaint to add the proposed fourth cause of action (see CPLR 3025[b]; Mahler v North Shore Camp, LLC, 145 AD3d 678, 679).
The defendants nevertheless maintain that the Supreme Court improvidently exercised its discretion because the fourth cause of action not only refers to Frierson's fear for her own safety, but also alleges that Frierson "feared the imminent injuries and death of her granddaughter." The defendants argue that emotional damages suffered as a consequence of this type of fear are only recoverable if the granddaughter was a member of Frierson's immediate family.
The zone of danger test for bystander recovery does not pertain to the existence of a duty, it merely provides that an additional "element of . . . damages" is recoverable if the bystander can also establish "damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family" (Bovsun v Sanperi, 61 NY2d at 231). In other words, the duty owed by a defendant to a bystander does not depend on the bystander's relationship to the other victim. No new duty arises when the zone-of-danger test is satisfied, rather, the satisfaction of that test merely "permits recovery for an element of damages not heretofore allowed" (id. at 229).
It is clear that the key matter at issue on this appeal is the availability of a portion of the damages sought in connection with the proposed fourth cause of action, to wit, damages for the emotional injuries caused solely by Frierson's fear for her granddaughter's safety, as well as the anguish caused by witnessing the injuries that caused the granddaughter's death, as distinguished from the emotional injuries simultaneously caused by Frierson's fear for her own safety (compare Restatement [Third] of Torts § 47[a], with Restatement [Third] of Torts § 48).
The parsing of Frierson's emotional trauma into discrete portions that correspond to concurrent causes has no basis in reality, and should not be compelled by the courts (accord Comstock v Wilson, 257 NY at 237; Jones v Brooklyn Hgts. R.R. Co., 23 App Div at 143-144). As this case illustrates, the metaphysical gymnastics involved in such an enterprise are tortuous. Under the defendants' view, the jury would be entitled to compensate Frierson for damages for mental trauma resulting from (1) her fear experienced in connection with her own physical injuries, and (2) her fear experienced in connection with her own exposure to a risk of death, but not for (3) her simultaneous fear for her granddaughter, which was caused by the same acts of negligence. Under the circumstances of this case, Frierson should be entitled to recover damages for all of the emotional injuries she sustained as a result of this incident.
In the event that the zone-of-danger test is still viable where the plaintiff alleges concurrent, physical injury (cf. Shanahan v Orenstein, 52 AD2d 164, 167), the "immediate family" requirement should be replaced by a more functional approach that focuses on the nature of the relationship between the bystander and the injured third party. Such an approach will recognize the legitimacy of non-traditional family structures and evolving social practices. A bystander should be entitled to recover if they establish that they are a "close family member" of the injured third party [*8](Restatement [Third] of Torts § 48[b]). Given the allegations contained in the proposed second amended complaint and the procedural posture of this case, the determination of this issue cannot be made as a matter of law at this time.
Under the zone-of-danger test, as presently formulated, "where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family  assuming, of course, that it is established that the defendant's conduct was a substantial factor bringing about such injury or death" (Bovsun v Sanperi, 61 NY2d at 230-231).
Specifically addressing the "immediate family" requirement, this Court has stated that "[t]he Court of Appeals has exercised its prerogative to balance the competing interests and announce the public policy of this state to limit liability to the class of persons identified as immediate family' in Bovsun" (Jun Chi Guan v Tuscan Dairy Farms, 24 AD3d at 726). This Court has previously held that "[t]his class of persons does not include a plaintiff's grand[child]" (id.).
In its most recent effort to justify these boundaries, the Court of Appeals revived the old policy arguments that it has alternatively embraced and rejected throughout the last century (see Trombetta v Conkling, 82 NY2d at 553-554; cf. Bovsun v Sanperi, 61 NY2d at 231-232). The Court stated: "As a policy matter, we continue to balance the competing interests at stake by limiting the availability of recovery for the negligent infliction of emotional distress to a strictly and objectively defined class of bystanders. In addition to the prevention of an unmanageable proliferation of such claims--with their own proof problems and potentiality for inappropriate claims--the restriction of this cause of action to a discrete readily determinable class also takes cognizance of the complex responsibility that would be imposed on the courts in this area to assess an enormous range and array of emotional ties of, at times, an attenuated or easily embroidered nature" (Trombetta v Conkling, 82 NY2d at 553-554).
If this bright-line test "objectively" defines those who may recover, it does so arbitrarily. The use of consanguinity as a crude proxy for emotional harm is to sanction the arbitrary and unjust results that will inevitably follow when, for instance, a child is denied recovery because he or she does not live within a traditional family structure (cf. Thompson v Dhaiti, 103 AD3d 711; see generally Thomas T. Uhl, Note, Bystander Emotional Distress: Missing an Opportunity to Strengthen the Ties that Bind, 61 Brooklyn L Rev 1399, 1426 [1995]). "To be sure, line drawing is often an inevitable element of the common-law process, but [it] . . . does not justify our clinging to a line that has proved indefensible" (Broadnax v Gonzalez, 2 NY3d 148, 156).
Given such arbitrary results, it is not difficult to understand why this "settled" rule continues to be challenged to this day (Jun Chi Guan v Tuscan Dairy Farms, 24 AD3d at 726). Nor is it difficult to understand why the bulk of modern legal authority has moved away from the formalistic approach of the "immediate family" prerequisite and toward a more pragmatic standard that inquires into the functional nature of the bystander's relationship with the injured third party.
For example, the Second Restatement of Torts took the view that "where the defendant's negligent conduct threatens bodily harm to the plaintiff through direct impact upon his person . . . and the bodily harm is brought about instead by the plaintiff's emotional disturbance at the peril or harm of a third person . . . the defendant is subject to liability if the third person is a member of the plaintiff's immediate family" (Restatement [Second] of Torts § 436, Comment f [emphasis added]).
In the Third Restatement, the use of the term "immediate family" has been rejected (see Restatement [Third] of Torts § 48). The Third Restatement states that "[a]n actor who negligently causes sudden serious bodily injury to a third person is subject to liability for serious emotional harm caused thereby to a person who . . . perceives the event contemporaneously, and . . . is a close family member of the person suffering the bodily injury" (Restatement [Third] of Torts § 48 [emphasis added]).
In its commentary on this section, the Third Restatement recognizes that "[s]ometimes people live functionally in a nuclear family without formal legal family ties" (Restatement [Third] of Torts § 48, Comment f). "When defining what constitutes a close family relationship, courts should take into account changing practices and social norms and employ a functional approach to determine what constitutes a family" (id.). The commentary specifically indicates that a grandparent may qualify as a close family member (see id.).
As the plaintiffs correctly argue, the Supreme Court of Oregon has recently adopted the test set forth in the Third Restatement (see Philibert v Kluser, 360 Or, 698, 711-712, 385 P3d 1038, 1046). Many other jurisdictions have similarly rejected the strict formalistic approach adopted by the Court of Appeals in favor of a functional test that inquires into the nature of the relationship between the bystander and the injured third party (see e.g. Ramsey v Beavers, 931 SW2d 527, 531-532 [Tenn Sup Ct]; Paugh v Hanks, 6 Ohio St 3d 72, 79, 451 NE2d 759, 766).
For example, the Supreme Court of New Hampshire has stated: "[W]e decline to adopt a bright line rule when a flexible approach, designed to account for factual nuances is available" (Graves v Estabrook, 149 NH 202, 209, 818 A2d 1255, 1261 [internal quotation marks omitted]). The Supreme Court of Washington has similarly stated: "We decline to draw an absolute boundary around the class of persons whose peril may stimulate the mental distress" (Hunsley v Giard, 87 Wash 2d 424, 436, 553 P2d 1096, 1103). The Supreme Court of New Jersey has explicitly rejected the New York requirement of "a strict blood relationship" in favor of a test that "focus[es] on the nature and integrity of the relationship" (Dunphy v Gregor, 136 NJ 99, 114-115, 642 A2d 372, 379).
The Court of Appeals' policy argument that the "immediate family" requirement is easy to apply also fails to hold up to scrutiny. This case well illustrates this point. Even where the immediate family requirement is easily applied to eliminate a portion of emotional damages attributable to bystander recovery, such a finding does not preclude the plaintiff from seeking damages for emotional injuries attributable to other causes. Under these circumstances, the strict application of the immediate family requirement is simply a prelude to a metaphysical parsing of emotional trauma. Thus, while the Court of Appeals has decried the ability of courts "to assess an enormous range and array of emotional ties" (Trombetta v Conkling, 82 NY2d at 554), it nevertheless requires them to parse out the array of concurrent causes that may contribute to an individual's emotional trauma. In any event, courts are well equipped to inquire into the nature of interpersonal relationships, as is evident from other legal contexts (see e.g. Millington v Southeastern El. Co., 22 NY2d 498, 502 ["[t]he concept of consortium includes not only loss of support or services, it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more"]).
Finally, allowing plaintiffs to recover damages for all of the emotional injuries sustained as a result of a defendant's negligent conduct, where such conduct breached a duty of care owed directly to those plaintiffs, would not lead to unlimited liability. The idea that "[e]very injury has ramifying consequences, like the ripplings of the waters, without end" (Trombetta v Conkling, 82 NY2d at 554 [internal quotation marks omitted]), even if true, does not mean that liability would also extend ad infinitum. While every injury may have infinite consequences, it does not follow that every injury leads to an infinite number of additional injuries.
Furthermore, the limits of liability are already circumscribed by the requirement that a plaintiff must be in the zone of danger when the injury to the third party occurs. Many state courts, and the Third Restatement, do not require that a plaintiff be in the zone of danger at all (see e.g. Paugh v Hanks, 6 Ohio St 3d at 79, 451 NE2d at 766; Restatement [Third] of Torts § 48). The requirement of a close family relationship is thought sufficient to limit liability to manageable bounds. Other state courts which apply the zone-of-danger requirement rely on that limitation alone and do not also inquire into the relationship between the plaintiff and the injured third party (see e.g. Asaro v Cardinal Glennon Mem. Hosp., 799 SW2d 595, 599-600 [Mo Sup Ct]).
In New York, of course, these limiting factors have been piled on top of each other [*9]and are applied together to protect the New York court system from the flood of litigation that has been predicted. Notwithstanding such dire predictions, the courts in these other jurisdictions, to my knowledge, have not ceased to function. In any event, "[i]t is the business of law to remedy wrongs that deserve it, even at the expense of a flood of litigation, and it is a pitiful confession of incompetence on the part of any court of justice to deny relief on such grounds" (Prosser & Keeton, Torts § 12 at 56 [internal quotation marks omitted]).
In sum, even the most ardent supporters of the current state of the law in this area must acknowledge that it "lacks that coherence which precedent should possess" (Battalla v State of New York, 10 NY2d at 239; see generally Harold F. McNiece, Psychic Injury and Tort Liability in New York, 24 St. John's L Rev 1, 33). And while I acknowledge the importance of such precedent, it must be cast away when it "has failed to withstand the cold light of logic and experience" (Broadnax v Gonzalez, 2 NY3d at 156). That is the case here.
4. Conclusion
If it is still true in this state that "one may seek redress for every substantial wrong" (Battalla v State of New York, 10 NY2d at 240), and that "[f]reedom from mental disturbance is . . . a protected interest" (Ferrara v Galluchio, 5 NY2d 16, 21), the order must be affirmed insofar as appealed from.
In light of the foregoing, I conclude that the Supreme Court did not improvidently exercise its discretion in granting that branch of the plaintiffs' motion which was for leave to amend the amended complaint to add the proposed fourth cause of action. Accordingly, I vote to affirm the order insofar as appealed from, and must respectfully dissent.
ENTER:
Aprilanne Agostino
Clerk of the Court